IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

LEE V. QUILLAR,

    Plaintiff,                      No. CIV S-06-2394 FCD GGH P

    vs.

NIKKI ZEPEDA, et al.,

                                  ORDER &
    Defendant.               FINDINGS AND RECOMMENDATIONS

_____/

I. <u>Introduction</u>

        Plaintiff is a state prisoner proceeding pro se with a civil rights action pursuant to 42 U.S.C. § 1983. Pending before the court is defendants' motion to dismiss, filed on October 22, 2008, for failure to exhaust administrative remedies and for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6). Plaintiff filed an opposition on November 13, 2008, to which defendants filed a reply.

II. <u>Complaint</u>

        Plaintiff alleges many instances where defendants violated his due process rights at several prison disciplinary hearings, most stemming from an excessive force incident on August 28, 2005. Plaintiff first contends that in July 2005, Lt. Shankland violated his due process rights at a hearing to adjudicate a rules violation report.

1

1    On August 28, 2005, Correctional Officer (c/o) Zepeda used excessive force against plaintiff during an altercation that led to plaintiff being placed in Administrative Segregation (Ad Seg). Following this incident Captain Martinez, c/o Zepeda, c/o Robinson and Lt. Shankland falsified documents and fabricated charges against plaintiff.

On September 13, 2005, c/o Hadenfelt refused to recuse herself as plaintiff's investigative employee who was responsible for looking into the August 28, 2005 incident. Correctional Officer Hadenfelt falsified a report stating that plaintiff had no defense and accepted her as his investigative employee.

On October 18, 2005, Lt. Shankland improperly presided over a disciplinary hearing using false allegations and falsified documents concerning the August 28, 2005, incident, that Captain Martinez approved.

On December 2, 2005,[1] Deputy Warden O'Ran, Associate Warden Cullen, Correctional Counselor Anderson and Captain Martinez violated plaintiff's due process rights in an ICC hearing by extending plaintiff's term in Ad Seg without finding him guilty and refusing to allow plaintiff to enter any statements or evidence in his defense.

On January 13, 2006, Lt. Shankland confiscated plaintiff's legal materials, that caused plaintiff to default on an appeal to the Supreme Court.

In January 2006, Lt. Twyman violated plaintiff's due process rights by finding him guilty at a disciplinary hearing without allowing plaintiff to call witnesses or present evidence.

After a grievance appeal, plaintiff was given a re-hearing concerning the excessive force incident and on February 18, 2006, Lt. Hollinger found plaintiff guilty during a disciplinary re-hearing but did not allow plaintiff to present evidence.

\\\\\

---

[1] It seems that plaintiff erroneously refers to this incident occurring on October 5, 2005.

1   On May 13, 2006, Lt. Hall found plaintiff guilty during another disciplinary re-
2 hearing of the August 28, 2005, incident, without allowing plaintiff to present evidence.

3   III.  Motion to Dismiss

4   Standard

5   In order to survive dismissal for failure to state a claim pursuant to Rule 12(b)(6),
6 a complaint must contain more than a "formulaic recitation of the elements of a cause of action;"
7 it must contain factual allegations sufficient to "raise a right to relief above the speculative
8 level." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 127 S.Ct. 1955, 1965 (2007). "The
9 pleading must contain something more...than...a statement of facts that merely creates a suspicion
10 [of] a legally cognizable right of action." Id., quoting 5 C. Wright & A. Miller, Federal Practice
11 and Procedure § 1216, pp. 235-236 (3d ed. 2004). "[A] complaint must contain sufficient factual
12 matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal,
13 No. 07-1015, 2009 WL 1361536 at * 12 (May 18, 2009) (quoting Twombly, 550 U.S. at 570,
14 127 S.Ct. 1955). "A claim has facial plausibility when the plaintiff pleads factual content that
15 allows the court to draw the reasonable inference that the defendant is liable for the misconduct
16 alleged." Id.

17   In considering a motion to dismiss, the court must accept as true the allegations of
18 the complaint in question, Hospital Bldg. Co. v. Rex Hospital Trustees, 425 U.S. 738, 740, 96 S.
19 Ct. 1848, 1850 (1976), construe the pleading in the light most favorable to the party opposing the
20 motion and resolve all doubts in the pleader's favor. Jenkins v. McKeithen, 395 U.S. 411, 421,
21 89 S. Ct. 1843, 1849, reh'g denied, 396 U.S. 869, 90 S. Ct. 35 (1969). The court will "'presume
22 that general allegations embrace those specific facts that are necessary to support the claim.'"
23 National Organization for Women, Inc. v. Scheidler, 510 U.S. 249, 256, 114 S.Ct. 798, 803
24 (1994), quoting Lujan v. Defenders of Wildlife, 504 U.S. 555, 561, 112 S. Ct. 2130, 2137 (1992).
25 Moreover, pro se pleadings are held to a less stringent standard than those drafted by lawyers.
26 Haines v. Kerner, 404 U.S. 519, 520, 92 S. Ct. 594, 596 (1972).

1    The court may consider facts established by exhibits attached to the complaint. Durning v. First Boston Corp., 815 F.2d 1265, 1267 (9th Cir. 1987).  The court may also consider facts which may be judicially noticed, Mullis v. United States Bankruptcy Ct., 828 F.2d 1385, 1388 (9th Cir. 1987); and matters of public record, including pleadings, orders, and other papers filed with the court, Mack v. South Bay Beer Distributors, 798 F.2d 1279, 1282 (9th Cir. 1986).  The court need not accept legal conclusions "cast in the form of factual allegations." Western Mining Council v. Watt, 643 F.2d 618, 624 (9th Cir. 1981).

A pro se litigant is entitled to notice of the deficiencies in the complaint and an opportunity to amend, unless the complaint's deficiencies could not be cured by amendment.  See Noll v. Carlson, 809 F. 2d 1446, 1448 (9th Cir. 1987).

The Prison Litigation Reform Act (PLRA), 42 U.S.C. § 1997e(a) provides that, "[n]o action shall be brought with respect to prison conditions under [42 U.S.C. § 1983], or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."  Inmates seeking injunctive relief must exhaust administrative remedies.  Rumbles v. Hill, 182 F.3d 1064 (9th Cir.1999).  In Booth v. Churner, 532 U.S. 731,741, 121 S.Ct. 1819, 1825 (2001), the Supreme Court held that inmates must exhaust administrative remedies, regardless of the relief offered through administrative procedures.  Therefore, inmates seeking money damages must also completely exhaust their administrative remedies.  Booth v. Churner, 532 U.S. 731, 121 S.Ct. 1819  (inmates seeking money damages are required to exhaust administrative remedies even where the grievance process does not permit awards of money damages).  The United States Supreme Court has held that exhaustion of administrative remedies under the PLRA requires that the prisoner complete the administrative review process in accordance with the applicable procedural rules.  Woodford v. Ngo, 548 U.S. 81, 126 S.Ct. 2378 (2006).  Thus, in the context of the applicable PLRA § 1997e(a) exhaustion requirement, any question as to whether a procedural default may be found should a prisoner plaintiff fail to comply with the procedural rules of a prison's grievance system

has been resolved: the PLRA exhaustion requirement can only be satisfied by "proper exhaustion of administrative remedies....," which means that a prisoner cannot satisfy the requirement "by filing an untimely or otherwise procedurally defective administrative grievance or appeal." Woodford v. Ngo, supra, at 84, 126 S.Ct. at 2382.  Moreover, 42 U.S.C. § 1997e(a) provides that no action shall be brought with respect to prison conditions until such administrative remedies as are available are exhausted.  McKinney v. Carey, 311 F.3d 1198 (9th Cir.2002).

In order for California prisoners to exhaust administrative remedies, they must proceed through several levels of appeal: 1) informal resolution, 2) formal written appeal on a CDC 602 inmate appeal form, 3) second level appeal to the institution head or designee, and 4) third level appeal to the Director of the California Department of Corrections.  Barry v. Ratelle, 985 F.Supp. 1235, 1237 (S.D.Cal.1997) (citing Cal.Code Regs. tit. xv, § 3084.5).  Ordinarily, a final decision from the director's level of review satisfies the exhaustion requirement.  Id. at 1237-38.  But see Marella v. Terhune, 562 F.3d 983 (9th Cir. 2009) (need to exhaust steps when a prisoner is told no further remedies exist).

The PLRA exhaustion requirement is not jurisdictional but rather creates an affirmative defense that a defendant may raise in a non-enumerated Rule 12(b) motion.  See Jones v. Bock, 549 U.S. 199, 216, 127 S.Ct. 910 (2007) ("[I]nmates are not required to specially plead or demonstrate exhaustion in their complaints."); Wyatt v. Terhune, 315 F.3d 1108, 1117-19 (9th Cir.2003).  The defendants bear the burden of raising and proving the absence of exhaustion.  Wyatt, 315 F.3d at 1119.  "In deciding a motion to dismiss for a failure to exhaust nonjudicial remedies, the court may look beyond the pleadings and decide disputed issues of fact."  Id.  "I[f] the district court looks beyond the pleadings to a factual record in deciding the motion to dismiss for failure to exhaust-a procedure closely analogous to summary judgment-then the court must assure that [the prisoner] has fair notice of his opportunity to develop a record."  Id. at 1120 n. 14.  When the district court concludes that the prisoner has not exhausted administrative remedies on a claim, "the proper remedy is dismissal of the claim

5

without prejudice." Id. at 1120. See also Lira v. Herrera, 427 F.3d 1164, 1170 (9th Cir.2005). On the other hand, "if a complaint contains both good and bad claims, the court proceeds with the good and leaves the bad." Jones, 549 U.S. at 221.

Discussion

    Exhaustion

The parties dispute how many of the claims have been properly exhausted pursuant to the PRLA. After reviewing the record, the court has identified five administrative appeals that relate to this case and only two are properly exhausted.[2]

Plaintiff properly and timely exhausted inmate appeals, CMF-M-05-2622 and CMF-06-M-0219. CMF-M-05-2622 exhausted claims against Hadenfelt in her role as an investigative employee and Shankland and Martinez for their actions in the October 18, 2005, disciplinary hearing.[3] CMF-06-M-0219 exhausted claims against Shankland for seizing plaintiff's legal materials.

Plaintiff has attached three other inmate appeals to support his contention that all his claims are procedurally exhausted: CMF-M-06-0611, CMF-M-05-1427, CMF-M-05-1454. Plaintiff is incorrect, as these claims were not properly exhausted. Plaintiff contends that the claims were exhausted by the filing of the second amended complaint on November 13, 2007. However, pursuant to McKinney v. Carey, 311 F.3d 1198 (9th Cir.2002), administrative remedies must be exhausted prior to filing suit. Id. Plaintiff filed the instant action in state court on August 1, 2006. Defendants removed the case to federal court on October 27, 2006. The exhaustion requirement applies to all section 1983 claims regardless of whether the inmate files

---

[2] Plaintiff's 179 page opposition to the motion to dismiss contains several appeals and paperwork that do not involve the instant claims.

[3] Plaintiff argues that this appeal exhausted his claims against Zepeda for excessive force. Plaintiff is incorrect. He mentions Zepeda once in the appeal but only as the catalyst for the disciplinary hearing where he alleges his due process rights were violated. It is clear that the underlying claim of the appeal was the due process allegation.

his claim in state or federal court. <u>Johnson v. Louisiana ex rel. Louisiana Dept. of Public Safety and Corrections</u>, 468 F.3d 278 (5th Cir. 2006).[4] Therefore, plaintiff needed to exhaust his claims by August 1, 2006.

Appeal CMF-M-06-0611 was exhausted on October 23, 2006, after plaintiff filed the action in state court, but four days before the case was removed to federal court. Pursuant to <u>Johnson</u>, the claim must have been exhausted prior to the initial filing of the case in state or federal court.

There is no evidence that Appeal CMF-M-05-1427 was ever completely exhausted. A letter from the appeals chief show that as of December 18, 2006, the appeal was not exhausted. Plaintiff's Opposition to Motion to Dismiss (Opposition) at 146.[5] If the appeal was exhausted later, it would be after the instant action was filed, thus untimely.

Appeal CMF-M-05-1454 was not exhausted until March 17, 2007. Opposition at 178-179. A review of the record indicated that on December 6, 2006, the appeals chief refused to consider the appeal as exhausted as plaintiff had failed to include a minor document, that may or may not have been material. Opposition at 176. Even if the court were to construe the appeal exhausted by December 6, 2006, it would still be late.

Therefore, claims against Zepeda, Veal, Schwartz, Cullen, O'Ran, Anderson, Hollinger, Robinson, Tyman and Hall should be dismissed without prejudice. Also dismissed without prejudice are claims against Shankland relating to the July 2005 disciplinary hearing and claims against Martinez for trying to extend plaintiff's Ad Seg term on December 2, 2005.

\\\\\

---

[4] Plaintiff seems to argue that he is not subject to the exhaustion requirements as he originally brought this action under state law. However, it is clear that this action has proceeded under 42 U.S.C. § 1983 for violation of the federal constitution. Plaintiff's argument has no merit.

[5] The page numbers cited correspond with the pagination in the court's electronic docket as plaintiff did not number the exhibits.

<u>Failure to State a Claim</u>

<u>Due Process</u>

Though the allegations are hard to discern, plaintiff seems to contend that his due process rights were violated in the October 18, 2005, disciplinary hearing regarding the August excessive force incident. It is alleged that Shankland falsified charges and improperly presided over the hearing and Martinez approved the guilty finding.[6] Plaintiff maintains that he declined to accept Hadenfelt as his investigative employee but Hadenfelt refused and then attempted to have plaintiff sign a form stating that he would not present a defense at the hearing, which was untrue. There are several deficiencies with plaintiff's claims.

A review of the pleadings demonstrate that a portion of this claim may be moot. This claim was exhausted by appeal CMF-M-05-2622. At the second level appeal response, plaintiff's appeal was partially granted. It was confirmed that pursuant to prison regulations, plaintiff's due process rights were violated at the October hearing, as Shankland should not have presided over the hearing after preparing the violation report. Opposition at 44-45. As a result, plaintiff was given a new hearing.[7]

In addition, while plaintiff and defendant discuss the procedures that were in place for the disciplinary hearing this court is unsure of the deprivation at issue. A review of the record shows that plaintiff may or may not have spent time in Ad Seg as a result of the hearing, which may have led to an ICC hearing. However, plaintiff does not describe any alleged deprivation.

"The requirements of procedural due process apply only to the deprivation of interests encompassed by the Fourteenth Amendment's protection of liberty and property." <u>Board of Regents v. Roth</u>, 408 U.S. 564, 569, 92 S.Ct. 2701 (1972). State statutes and prison

---

[6] Plaintiff also makes a general statement that Shankland prevented him from presenting evidence, but provides no details.

[7] In fact, plaintiff was not given a copy of the investigative report at the second hearing, so a third hearing was ordered. Plaintiff also alleges due process violations at the second and third hearings, but the claims were not properly exhausted.

regulations may grant prisoners liberty interests sufficient to invoke due process protections. Meachum v. Fano, 427 U.S. 215, 223-27, 96 S.Ct. 2532 (1976).  However, the Supreme Court has significantly limited the instances in which due process can be invoked.  Pursuant to Sandin v. Conner, 515 U.S. 472, 483, 115 S.Ct. 2293 (1995), a prisoner can show a liberty interest under the Due Process Clause of the Fourteenth Amendment only if he alleges a change in confinement that imposes an "atypical and significant hardship ... in relation to the ordinary incidents of prison life." Id. at 484.

In this case, plaintiff has failed to establish a liberty interest protected by the Constitution because he has not alleged, as he must under Sandin, facts related to the conditions or consequences of his disciplinary hearings which show "the type of atypical, significant deprivation [that] might conceivably create a liberty interest."  Id. at 486.  For example, in Sandin, the Supreme Court considered three factors in determining whether the plaintiff possessed a liberty interest in avoiding disciplinary segregation: (1) the disciplinary versus discretionary nature of the segregation; (2) the restricted conditions of the prisoner's confinement and whether they amounted to a "major disruption in his environment" when compared to those shared by prisoners in the general population; and (3) the possibility of whether the prisoner's sentence was lengthened by his restricted custody.  Id. at 486-87.

To establish a due process violation, plaintiff must first show the deprivation imposed an atypical and significant hardship on him in relation to the ordinary incidents of prison life. Sandin, 515 U.S. at 483-84.  Plaintiff has failed to allege any facts from which the court could find there were atypical and significant hardships imposed upon him as a result of defendants' actions.  Plaintiff must allege "a dramatic departure from the basic conditions" of his confinement that would give rise to a liberty interest before he can claim a violation of due process.  Id. at 485.  Plaintiff has not; therefore the court finds that plaintiff has failed to allege a liberty interest, and thus, has failed to state a due process claim.

\\\\\

Even if plaintiff had established a deprivation, plaintiff's complaint does not set forth sufficient facts that illustrate a due process violation.

"Prison disciplinary proceedings are not part of a criminal prosecution, and the full panoply of rights due a defendant in such proceedings does not apply." Wolff v. McDonnell, 418 U.S. 539, 556, 94 S.Ct. 2963 (1974). With respect to prison disciplinary proceedings, the minimum procedural requirements that must be met are: (1) written notice of the charges; (2) at least 24 hours between the time the prisoner receives written notice and the time of the hearing, so that the prisoner may prepare his defense; (3) a written statement by the fact finders of the evidence they rely on and reasons for taking disciplinary action; (4) the right of the prisoner to call witnesses and present documentary evidence in his defense, when permitting him to do so would not be unduly hazardous to institutional safety or correctional goals; and (5) legal assistance to the prisoner where the prisoner is illiterate or the issues presented are legally complex. Id. at 563-71. Confrontation and cross examination are not generally required. Id. at 567. The right to call witnesses may legitimately be limited by "the penological need to provide swift discipline in individual cases ... [or] by the very real dangers in prison life which may result from violence or intimidation directed at either other inmates or staff." Ponte v. Real, 471 U.S. 491, 495, 105 S.Ct. 2192 (1985). As long as the five minimum Wolff requirements are met, due process has been satisfied. Walker v. Sumner, 14 F.3d 1415, 1420 (9th Cir.1994).

While plaintiff makes general allegations about false charges and an improper hearing, plaintiff was given timely notice of the charges and the fact finders provided a written statement for the reasons in finding plaintiff guilty.[8] Compl. Appendix at 8. Inmates facing disciplinary charges are entitled to the aid of a staff member (investigative employee) if the inmate is illiterate or the issues complex. Wolff v. McDonnell, 418 U.S. 539, 570, 94 S.Ct. 2963

---

[8] With respect to the ability to present evidence, plaintiff was not present at the hearing. Compl. Appendix at 8. However, plaintiff provides no details regarding the reasons for his absence and how the failure to present evidence violated his rights.

(1974).  Plaintiff is not illiterate and has not demonstrated that the issues involved were overly complex.  Once plaintiff refused to sign the forms that Hadenfelt presented, it is unclear what role Hadenfelt played in any alleged due process violation as plaintiff provides no further information.

Plaintiff has failed to allege sufficient facts for this claim.  He makes conclusory statements regarding the false reports and provides no details about being prevented from presenting evidence.  "[A] court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth.  While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations."  Ashcroft v. Iqbal, 07-1015, 2009 WL 1361536 at * 13 (May 18, 2009).  "[A] complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face."  Ashcroft, at * 12 (quoting Twombly, 550 U.S. at 570, 127 S.Ct. 1955).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  Id.

Thus, claims against Shankland, Martinez and Hadenfelt are dismissed with leave to file a third amended complaint, within thirty days of service of this order, to provide more detail about the alleged constitutional deprivation, any alleged due process violations and why this claim is not moot.  Failure to file a third amended complaint will result in a recommendation that this action be dismissed.

Access to the Courts

Plaintiff argues that Shankland confiscated his legal documents and as a result plaintiff defaulted on an opportunity to file a petition for a writ of certiorari before the Supreme Court.

Prisoners have a constitutional right to be afforded  "a reasonably adequate opportunity to present claimed violations of fundamental constitutional rights to the courts."

Lewis v. Casey, 518 U.S. 343, 351, 116 S.Ct. 2174 (1996).  This right applies to prisoners' challenges to their convictions or sentences or conditions of confinement.  Id. at 354.  Prison officials may not "actively interfer[e] with inmates' attempts to prepare legal documents or file them."  Id. at 350.  To establish a claim for any violation of the right of access to the courts, prisoners must prove an actual injury by showing that their efforts to pursue a non-frivolous claim concerning their conviction or conditions of confinement has been hindered.  Id. at 350-55.

        The record contains two letters from the Supreme Court Office of the Clerk.  The second letter, dated January 6, 2006, granted plaintiff an extension of time to January 18, 2006, to file a writ certiorari in the case of Lee Quillar v. Elizabeth Barranco.  Opposition at 55.  Plaintiff alleges that his legal documents were confiscated on January 13, 2006.  However, plaintiff has provided no details regarding the nature of this suit and the documents that were confiscated.  As noted above, the right to access the courts encompasses only direct criminal appeals, habeas petitions and civil rights actions challenging conditions of confinement.  Lewis, at 354, 116 S.Ct. 2174.  This claim is dismissed and plaintiff will be granted leave to file a third amended complaint to provide details regarding the nature of the suit, the missing documents and how their confiscation prevented plaintiff from timely filing his petition for writ of certiorari.

        Accordingly, the motion to dismiss should be granted as to all defendants.

        IT IS HEREBY ORDERED that:

        1.  The motion to dismiss (docket #44) be granted as to defendants Shankland, Martinez and Hadenfelt with respect to the October 18, 2005, disciplinary hearing and the claim against Shankland for denial of access to the courts.  These claims are dismissed with leave to file a third amended complaint within thirty days of service of this order.  Failure to file a third amended complaint will result in a recommendation that this action be dismissed.

        IT IS HEREBY RECOMMENDED that:

        1.  The motion to dismiss (docket #44) be granted and defendants Zepeda, Veal, Schwartz, Cullen, O'Ran, Anderson, Hollinger, Robinson, Tyman and Hall should be dismissed

without prejudice for failure to exhaust.

    2. Claims against Shankland relating to the July 2005 disciplinary hearing and claims against Martinez for trying to extend plaintiff's Ad Seg term on December 2, 2005 should also be dismissed without prejudice for failure to exhaust.

    These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within twenty days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Any reply to the objections shall be served and filed within ten days after service of the objections. The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. <u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th Cir. 1991).

DATED: 06/10/09

    /s/ Gregory G. Hollows

    GREGORY G. HOLLOWS
    UNITED STATES MAGISTRATE JUDGE

ggh:ab
quil2394.mtd