1
2
3
4
5
6
7                    UNITED STATES DISTRICT COURT

8                FOR THE EASTERN DISTRICT OF CALIFORNIA

9

10   LEE V. QUILLAR,                        No. 2:06-cv-2394 JAM KJN P

11              Plaintiff,

12        v.                                FINDINGS AND RECOMMENDATIONS

13   NIKKI ZEPEDA, et al.,

14              Defendants.

15

16   I.  Introduction

17         Plaintiff Lee Quillar is a state prisoner, currently incarcerated at Folsom State Prison,

18   under the authority of the California Department of Corrections and Rehabilitation (CDCR).

19   Plaintiff proceeds in forma pauperis and without counsel in this civil rights action filed pursuant

20   to 42 U.S.C. § 1983.  This case proceeds on plaintiff's Third Amended Complaint (TAC), filed

21   July 6, 2009.  (ECF No. 54.)  Correctional Lieutenant D. Shankland is the only remaining

22   defendant.  Pending for decision is defendant's motion for summary judgment, filed October 29,

23   2012.  (ECF No. 106.)  For the reasons that follow, this court recommends that defendant's

24   motion for summary judgment be granted.

25   II.  Procedural History

26         Plaintiff initiated this action in the Solano County Superior Court, on August 1, 2006,

27   against twelve defendants.  (See ECF No. 2.)  Defendants removed the action to this court on

28   October 27, 2006.  (Id.)  See 28 U.S.C. § 1441(a) (authorizing removal of state court action that

1

asserts a claim over which the federal courts have original jurisdiction).  In orders filed August

11, 2009, and October 16, 2009, this court dismissed all the defendants, and the TAC, and entered

judgment closing the case.  (ECF Nos. 57, 66, 77.)  Plaintiff timely filed an appeal.

On March 1, 2011 (mandate issued March 23, 2011), the Ninth Circuit Court of Appeals

affirmed in part, and reversed in part, this court's order of dismissal, and remanded the action

back to this court for further proceedings.  See Quillar v. D. Shankland et al., Case No. 09-17432

(9th Cir. 2009) (ECF No. 71; see also ECF Nos. 68, 74.)  The Court of Appeals found, in

pertinent part, that the TAC states a claim for relief against defendant Shankland for denial of

access to the courts.  The Court of Appeals explained (ECF No. 71 at 2-3):

> The district court concluded that Quillar failed to state a claim
> against defendant Shankland for denial of access to the courts.
> However, Quillar alleged that Shankland confiscated his legal
> documents, which caused Quillar to miss the deadline for filing a
> writ of certiorari to the U.S. Supreme Court concerning his criminal
> conviction.  Liberally construed, the third amended complaint states
> a claim for relief.  See Hebbe v. Pliler, 627 F.3d 338, 343-43 (9th
> Cir. 2010) (pro se prisoner stated a claim for denial of access to the
> courts where he was denied access to the prison law library, which
> prevented him from filing a brief in support of his criminal appeal).

On remand, this court directed service of the TAC on defendant Shankland.  (ECF Nos.

72, 75.)  On March 12, 2012, defendant answered the TAC (ECF No. 102), and on October 29,

2012, defendant moved for summary judgment (ECF No. 106).  Plaintiff filed an opposition to

the pending motion on December 3, 2012 (ECF No. 114); defendant filed a reply on January 10,

2013 (ECF No. 118).

On October 29, 2012, in tandem with filing the instant motion, defendant timely advised

plaintiff of the requirements for opposing a motion for summary judgment, pursuant to Rule 56,

Federal Rules of Civil Procedure.  See Woods v. Carey, 684 F.3d 934 (9th Cir. 2012); Rand v.

Rowland, 154 F.3d 952 (9th Cir. 1998) (en banc); and Klingele v. Eikenberry, 849 F.2d 409 (9th

Cir. 1988).  (ECF No. 111.)

On July 1, 2013, this action was transferred to the undersigned magistrate judge.  (ECF

No. 119.)  All outstanding matters have been resolved except the pending motion for summary

judgment.

III. Legal Standards for Summary Judgment

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

> Under summary judgment practice, the moving party always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact.

Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (quoting then-numbered Fed. R. Civ. P. 56(c).)  "Where the nonmoving party bears the burden of proof at trial, the moving party need only prove that there is an absence of evidence to support the non-moving party's case." Nursing Home Pension Fund, Local 144 v. Oracle Corp. (In re Oracle Corp. Sec. Litig.), 627 F.3d 376, 387 (9th Cir. 2010) (citing Celotex, 477 U.S. at 325); see also Fed. R. Civ. P. 56 Advisory Committee Notes to 2010 Amendments (recognizing that "a party who does not have the trial burden of production may rely on a showing that a party who does have the trial burden cannot produce admissible evidence to carry its burden as to the fact").  Indeed, summary judgment should be entered, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.  Celotex, 477 U.S. at 322.  "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial."  Id. at 323.

Consequently, if the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually exists.  See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).  In attempting to establish the existence of such a factual dispute, the opposing party may not rely upon the allegations or denials of its pleadings, but is required to tender evidence of specific facts in the form of affidavits, and/or admissible discovery material in support of its contention that such a dispute exists.  See Fed. R. Civ. P. 56(c); Matsushita, 475 U.S. at 586 n.11.  The opposing party

3

1    must demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome

2    of the suit under the governing law, see Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248

3    (1986); T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir.

4    1987), and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could return

5    a verdict for the nonmoving party, see Wool v. Tandem Computers, Inc., 818 F.2d 1433, 1436

6    (9th Cir. 1987).

7         In the endeavor to establish the existence of a factual dispute, the opposing party need not

8    establish a material issue of fact conclusively in its favor.  It is sufficient that "the claimed factual

9    dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at

10   trial." T.W. Elec. Serv., 809 F.2d at 630.  Thus, the "purpose of summary judgment is to „pierce

11   the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'"

12   Matsushita, 475 U.S. at 587 (quoting Fed. R. Civ. P. 56(e) Advisory Committee's Note to 1963

13   Amendments).

14        In resolving a summary judgment motion, the court examines the pleadings, depositions,

15   answers to interrogatories, and admissions on file, together with the affidavits, if any.  Fed. R.

16   Civ. P. 56(c).  The evidence of the opposing party is to be believed.  See Anderson, 477 U.S. at

17   255.  All reasonable inferences that may be drawn from the facts placed before the court must be

18   drawn in favor of the opposing party.  Matsushita, 475 U.S. at 587.  Nevertheless, inferences are

19   not drawn out of the air, and it is the opposing party's obligation to produce a factual predicate

20   from which the inference may be drawn.  Richards v. Nielsen Freight Lines, 602 F. Supp. 1224,

21   1244-45 (E.D. Cal. 1985), aff'd, 810 F.2d 898, 902 (9th Cir. 1987).  Finally, to demonstrate a

22   genuine issue, the opposing party "must do more than simply show that there is some

23   metaphysical doubt as to the material facts. . . . Where the record taken as a whole could not lead

24   a rational trier of fact to find for the nonmoving party, there is no „genuine issue for trial.'"

25   Matsushita, 475 U.S. at 586 (citation omitted).

26   IV.  Legal Standards for Denial of Access to the Courts Claim

27        In a line of cases holding that prisoners have a right to litigate without active

28   governmental interference, "the Supreme Court has held that the First Amendment right to

4

1    petition the government includes the right to file other civil actions in court that have a reasonable

2    basis in law or fact.  This right does not require prison officials to provide affirmative assistance

3    in the preparation of legal papers, but rather forbids states from erecting barriers that impede the

4    right of access of incarcerated persons.  Thus, aside from their affirmative right to the tools

5    necessary to challenge their sentences or conditions of confinement, prisoners also have a right,

6    protected by the First Amendment right to petition and the Fourteenth Amendment right to

7    substantive due process, to pursue legal redress for claims that have a reasonable basis in law or

8    fact." Silva v. Di Vittorio, 658 F.3d 1090, 1102-03 (9th Cir. 2011) (citations, internal quotation

9    marks and punctuation omitted).

10        To survive summary judgment on a denial of access claim, plaintiff must present evidence

11   demonstrating triable issues of fact on the essential elements of the claim.  Plaintiff must

12   demonstrate that he suffered a specific "actual injury" involving a "nonfrivolous legal claim,"

13   Lewis v. Casey, 518 U.S. 343, 349-55 (1996), and that he was prevented from pursuing the claim

14   due to defendant's "failure to fulfill [his] constitutional obligations," Allen v. Sakai, 48 F.3d

15   1082, 1091 (9th Cir. 1994).

16        A lost opportunity to pursue a nonfrivolous legal matter is a "backward-looking" denial of

17   access claim.  Christopher v. Harbury, 536 U.S. 403, 413-15 (2002) ("plaintiff must identify a

18   'nonfrivolous,' 'arguable' underlying claim") (citing Lewis, 518 U.S. at 353 n.3 and related text).

19   Plaintiff must demonstrate that a "specific case" of his "cannot now be tried (or tried with all

20   material evidence), no matter what official action may be in the future."  Id. at 413-14 (fn.

21   omitted).  "[T]he underlying cause of action . . . is an element that must be described in the

22   complaint, just as much as allegations must describe the official acts frustrating the litigation. . . .

23   [T]he complaint must identify a remedy that may be awarded as recompense but not otherwise

24   available in some suit that may yet be brought."  Id. at 415. "[T]he underlying cause of action and

25   its lost remedy must be addressed by allegations in the complaint sufficient to give fair notice to a

26   defendant."  Id. at 416.  There is a "need for care in requiring that the predicate claim be

27   described well enough to apply the 'nonfrivolous' test and to show that the 'arguable' nature of

28   the underlying claim is more than hope.  And because these backward-looking cases are brought

5

1 to get relief unobtainable in other suits, the remedy sought must itself be identified . . . ." Id. (fn.

2 omitted).  See also Hebbe v. Pliler, supra, 627 F.3d at 343 (plaintiff must allege "actual injury").

3    A plaintiff must also demonstrate that his alleged actual injury was caused by the

4 defendant's challenged conduct.  "A person 'subjects' another to the deprivation of a

5 constitutional right, within the meaning of section 1983, if he does an affirmative act, participates

6 in another's affirmative acts, or omits to perform an act which he is legally required to do that

7 causes the deprivation of which complaint is made. . . . [P]ersonal participation is not the only

8 predicate for section 1983 liability.  Anyone who 'causes' any citizen to be subjected to a

9 constitutional deprivation is also liable.  The requisite causal connection can be established not

10 only by some kind of direct personal participation in the deprivation, but also by setting in motion

11 a series of acts by others which the actor knows or reasonably should know would cause others to

12 inflict the constitutional injury."  Johnson v. Duffy, 588 F.2d 740, 743-44 (9th Cir. 1978)

13 (citations omitted).

14 V.  Overview of the Third Amended Complaint

15    The pertinent allegations of the TAC (ECF No. 54) assert that defendant Shankland, in

16 retaliation against plaintiff for pursuing a separate civil rights action, Quillar v. CDCR, District

17 Court Case No. 04-1203 FCD KJM P (E.D. Cal.), initiated and pursued false disciplinary and

18 criminal charges against plaintiff.  Although Shankland was not a defendant in Quillar v. CDCR,

19 plaintiff asserts that defendant Shankland was upset that plaintiff had therein broadly alleged the

20 denial of his rights under the Religious Land Use and Institutional Persons Act (RLUIPA).[1]

21    The allegedly resulting false disciplinary charge, asserted in the instant case, charged

22 plaintiff with battery on former defendant Correctional Officer N. Zepeda, on August 28, 2005.

23 Defendant Shankland issued and adjudicated the disciplinary charge, and directed plaintiff's

24 placement in administrative segregation (Ad Seg), commencing August 28, 2005.  (TAC at ¶¶ 11-

25

26

27

[1]  Notwithstanding plaintiff's assertions to the contrary, his alleged retaliation claim against
defendant Shankland is not before the court.  This case was remanded solely to determine
whether defendant Shankland's alleged confiscation of plaintiff's legal documents denied
plaintiff his constitutional right to access the courts, not to determine defendant's rationale for this
alleged conduct.

28

14, 20; <u>id.</u> at 3 n.1.)

Plaintiff was temporarily released from Ad Seg on January 13, 2006, and escorted to Housing Unit J-3, a dormitory-style housing unit under the supervision of defendant Shankland. (TAC at ¶¶ 24, 26.)  "Out of fear for his safety," plaintiff requested his return to Ad Seg, allegedly as a matter of protective custody under 15 C.C.R. § 3341.5(a)(1).[2]  (<u>Id.</u> at ¶ 27.) Plaintiff alleges that defendant Shankland thereupon confiscated plaintiff's legal documents, despite plaintiff stating that he had an imminent deadline in the United States Supreme Court concerning his "criminal appeal."  (<u>Id.</u> at ¶ 29.)  Plaintiff alleges that defendant Shankland continued to withhold plaintiff's legal documents, causing plaintiff to miss the Supreme Court deadline, and thus denied plaintiff his constitutional right to access to the courts.  (<u>Id.</u> at ¶ 47; <u>id.</u> at 12 (¶A-4).)

The TAC seeks compensatory and punitive damages based on a requested declaratory judgment that finds, in pertinent part, that "Defendant Shankland having confiscated Plaintiff's legal documents after clearly learning that Plaintiff was on a legal deadline, caus[ed] Plaintiff to default leading to being time barred in the last court of resort; constitutes a denial of access to court."  (TAC at 12 (¶A-4).)

VI.  <u>Undisputed Facts</u>

Pursuant to the court's review of the record, the following facts have been deemed undisputed for purposes of the pending motion:[3]

---

[2]  15 C.C.R. § 3341.5(a)(1) provides:

> Special housing units are designated for extended term programming of inmates not suited for general population. Placement into and release from these units requires approval by a classification staff representative (CSR). (a) <u>Protective Housing Unit (PHU)</u>. An inmate whose safety would be endangered by general population placement may be placed in the PHU providing the following criteria are met: (1) The inmate does not require specialized housing for reasons other than protection.

[3]  Defendant filed a "Statement of Undisputed Facts" (ECF No. 107), as required by Fed. R. Civ. P. 56(c), and Local Rule 260(a).  In a "Statement of Disputed Facts" (ECF No. 114-2), plaintiff objected to each of defendant's undisputed facts on the ground that defendant failed to properly answer the complaint, thereby admitting the factual allegations in the complaint.  (<u>Id.</u> (citing Fed.

1          1.  At all times relevant to this action, plaintiff was incarcerated at the California Medical

2   Facility (CMF), in Vacaville, California.

3          2.  At all times relevant to this action, defendant Shankland worked at CMF as a

4   Correctional Lieutenant.

5          3.  Plaintiff alleges, that during the relevant period, his petition for writ of certiorari

6   challenging his underlying criminal conviction was pending in the United States Supreme Court.

7   Plaintiff avers that, on February 24, 2005, he "served each Supreme Court Justice with a writ of

8   certiorari," seeking review of the Ninth Circuit Court of Appeals' October 20, 2004 affirmance of

9   the district court's denial of his petition for writ of habeas corpus, and December 30, 2004 denial

10  of plaintiff's petition for rehearing, in Quillar v. State of California (hereafter Quillar v.

11  California), Court of Appeals Case No. 03-56118 (9th Cir.), District Court Case No. 01-0968

12  BTM BEN (S.D. Cal.).  (See Pltf. Decl., ¶ 11; Exh. M (ECF No. 114-3 at 3, 44-52).)

13         4.  On November 17, 2005, plaintiff sent to the Supreme Court a request for additional

14  time to file a petition for a writ of certiorari in Quillar v. Barranco, Court of Appeals Case No. 04-

15  56571 (9th Cir. 2005), District Court Case No. 04-01405 DMS JFS (S.D. Cal.).  Plaintiff sought

16  additional time "due to prison guard abuse."  Plaintiff's letter was file-stamped "Received" by the

17  Supreme Court on November 29, 2005.  Quillar v. Barranco was a civil rights action, in which

18

19  R. Civ. P. 8).)  Plaintiff did not provide his own "Statement of Undisputed Facts."  There is no
    authority for plaintiff's approach.  As required by the Local Rules:

20
             Any party opposing a motion for summary judgment or summary
21           adjudication shall reproduce the itemized facts in the Statement of
             Undisputed Facts and admit those facts that are undisputed and
22           deny those that are disputed, including with each denial a citation to
             the particular portions of any pleading, affidavit, deposition,
23           interrogatory answer, admission, or other document relied upon in
             support of that denial. The opposing party may also file a concise
24           "Statement of Disputed Facts," and the source thereof in the record,
             of all additional material facts as to which there is a genuine issue
25           precluding summary judgment or adjudication.  The opposing party
             shall be responsible for the filing of all evidentiary documents cited
26           in the opposing papers.

27  Local Rule 260(b) (citing Local Rule 133(j); and Fed. R. Civ. P. 56).  Although plaintiff has
    separately submitted a declaration and allegedly supporting evidence, his failure to adhere to
28  appropriate procedures has required the court to identify those facts that appear to be undisputed.

1   plaintiff alleged that his appointed criminal defense counsel and her investigator violated

2   plaintiff's due process and equal protection rights by failing to share their investigative reports

3   with plaintiff.   (See Pltf. Decl., Exh. N (ECF No. 114-3 at 52); Dft. Request for Judicial Notice

4   (RFJN), Exh. A (ECF No. 110-1 at 2).)

5         5.  Plaintiff has submitted a letter, also dated November 17, 2005, wherein plaintiff

6   allegedly informed the Supreme Court that he had not yet received a response to his petition for

7   writ of certiorari served on each Justice on February 24, 2005, in Quillar v. California.  The letter

8   also requested "that Case No. 04-56571 appeal [Quillar v. Barranco] be considered with my direct

9   criminal appeal [Quillar v. California, Case No. 03-56118] as a related case."  (Pltf. Decl., Exh. N

10  (ECF No. 114-3 at 51); see also Pltf. Decl., ¶ 12 ("After having exhausted Case No. 04-56571 (42

11  U.S.C. § 1983), in the Ninth Circuit, I moved to have Case No. 04-56571 consolidated with Case

12  No. 03-56118. . . .").  Plaintiff's letter does not bear any date stamp or other indicia that it was

13  received by the Supreme Court.

14        6.  On December 1, 2005, the Supreme Court initially denied as untimely plaintiff's

15  November 17, 2005 request for an extension of time within which to file a petition for writ of

16  certiorari in Quillar v. Barranco, noting that the deadline for requesting such extension was

17  September 22, 2005.  (See Feudale Decl., Exh. B (ECF No. 109-2 at 8).)  The notice references

18  only plaintiff's civil rights action, Quillar v. Barranco, and plaintiff's "application for an

19  extension of time within which to file a petition for writ of certiorari in the above-entitled case."

20  (Id.)  The notice does not reference Quillar v. California, nor plaintiff's alleged request to

21  consolidate the two cases.

22        7.  However, on January 6, 2006, Justice O'Connor granted plaintiff's request for an

23  extension of time within which to file a petition for writ of certiorari in Quillar v. Barranco; the

24  deadline was extended to January 18, 2006.  (Dft. RFJN, Exh. E (ECF No. 110-5 at 2); Pltf. Decl.,

25  Exh. O (ECF No. 114-3 at 54); see also Quillar v. Barranco, Court of Appeals Case No. 04-56571

26  (9th Cir.) (Dkt. No. 39) (noting receipt of Supreme Court's January 6, 2006 letter, "re. ext of time

27  to file petition for writ of certiorari . . . until 1/18/16").  Justice O'Connor's notice references only

28  plaintiff's civil rights action, Quillar v. Barranco, and plaintiff's "application for an extension of

1    time within which to file a petition for writ of certiorari in the above-entitled case."  (ECF No.

2    114-3 at 54.)  The notice does not reference Quillar v. California, nor plaintiff's alleged request to

3    consolidate these two cases.

4         8.  On April 11, 2006 (long after the January 18, 2006 extended deadline), plaintiff mailed

5    a petition for a writ of certiorari in Quillar v. Barranco; it was received by the Supreme Court on

6    April 21, 2006.  (See Dft. RFJD, Exh. F (ECF No. 110-6 at 2); Pltf. Depo. Tr. At 44:21-45:7; id.,

7    Exh. 9.)  The Supreme Court found the petition untimely filed.  (Id.)  The notice, prepared by the

8    Office of the Clerk, referenced only plaintiff's civil rights action, Quillar v. Barranco, and

9    informed plaintiff that "[t]he above-entitled petition for a writ of certiorari . . . is out-of-time

10    inasmuch as an extension of time for filing was granted to and including January 18, 2006."  (Dft.

11    RFJD, Exh. F (ECF No. 110-6 at 2).)

12         9.  Meanwhile, on August 28, 2005, plaintiff was in an alleged physical altercation with

13    Correctional Officer Zepeda.  Plaintiff was placed in Ad Seg by defendant Shankland for

14    "resisting staff requiring the use of physical force to quall the incident."  (Pltf. Decl., ¶ 4; Exhs.

15    A, B (ECF No. 114-3 at 5-8).)   On August 29, 2005, defendant Shankland redesignated the

16    charges as "Battery on a Peace Officer," referred the matter to the District Attorney, and retained

17    plaintiff in Ad Seg pending action by the District Attorney.  (Pltf. Decl., ¶ 5; Exhs. C, D (ECF

18    No. 114-3 at 12-18); Exh. K.)  On September 13, 2005, defendant Shankland "wrote and signed

19    the CDC-115 disciplinary report as the reporting employee, [then] signed the CDC-115

20    disciplinary report as the reviewing officer, and personally assigned to [plaintiff] the investigating

21    employee [Correctional Officer A. Hadenfeldr] who refused to recuse herself at my request."

22    (Pltf. Decl., ¶ 6; Exhs. E, F (ECF No. 114-3 at 19-24).)

23         10.  Plaintiff has submitted three "Inmate Request for Interview" forms, allegedly

24    completed by plaintiff in September 2005, each requesting access to his legal documents.  None

25    of the forms indicate any official response -- the lines designated "Interviewed By," "Date," and

26    "Disposition," are blank.  These forms bear the following requests by plaintiff :

27         Inmate Request for Interview, dated September 5, 2005:  Last week
         I request[ed] my legal documents from my property explaining
28         legal deadlines on some of my issues.  As of to date, I received no

response.  I am again requesting my legal documents.  I have four boxes of legal documents.  Please arrange for me to retrieve.

Inmate Request for Interview, dated September 12, 2005:  I have made several request[s] now for my legal mail/briefs from my property.  I have "four boxes" (3 legal) and I need to retrieve several cases out of my property.  I do have deadlines on two of the cases.  Thank you!

Inmate Request for Interview, dated September 19, 2005:  I am "again" requesting to have copies of my legal documents.  I have pending cases and need to get several documents from my property!

(Pltf. Decl., Exh. H (ECF No. 114-3 at 28-30).)

11.  On October 5, 2005, plaintiff's Ad Seg placement was extended for 90 days by the Institutional Classification Committee (ICC).  (Pltf. Decl., ¶ 7; Exh. G (ECF No. 114-3 at 26).)  On October 18, 2005, plaintiff declined to attend his related disciplinary hearing, which was held in his absence.  (Pltf. Decl., Exh. I (ECF No. 114-3 at 32-3); Exh. J.)  On October 19, 2005, the District Attorney notified CMF that it would not file criminal charges against plaintiff.  (Pltf. Decl., Exh. K (ECF No. 114-3 at 39).)  On November 23, 2005, defendant Shankland completed the related disciplinary finding, specifically, that plaintiff was guilty of Title 15, Section 3005(c), California Code of Regulations (Battery on a Peace Officer), a "Division ‚B' Offense."  However, because deadlines for serving plaintiff and holding a hearing were not met, no credit forfeiture was assessed.  (Pltf. Decl., Exh. J (ECF No. 114-3 at 32-33).)

12.  On December 21, 2005, CMF Associate Warden V. Cullen audited the subject CDC-115, and ordered that it be reissued and subject to a new hearing.  (Pltf. Decl., ¶ 14; Exh. P (ECF No. 114-3 at 56).)  On January 13, 2006, the ICC reviewed the subject disciplinary matter and elected to release plaintiff from Ad Seg, with a custody reduction, effective immediately.  (Pltf. Decl., ¶ 15; Exh. Q (ECF No. 114-3 at 58).)

13.  On January 13, 2006, plaintiff was released to CMF Housing Unit J-3, a dormitory-style housing unit, under the supervision of defendant Shankland.  Plaintiff arrived with a cart containing his personal property, including legal materials.  (Shankland Decl., ¶¶ 4-5, 6, 8; Pltf. Decl. ¶ 4.)

////

11

14.  Upon arriving at Housing Unit J-3 and realizing, inter alia, that defendant Shankland supervised the unit, plaintiff immediately requested that he be placed back in Ad Seg, "for my own protection against Defendant Shankland." (Pltf. Decl., ¶ 16; Shankland Decl., ¶ 9.)

15.  Defendant Shankland recounts that, upon plaintiff's arrival at Unit J-3, "I overheard Quillar protesting his assignment to Unit J-3, arguing that he was not supposed to live in a dormitory due to his custody classification.  Quillar also insinuated that CDCR staff was trying to set him up for assault.  Upon hearing this escalating confrontation, I left my office to speak with Quillar.  Upon arrival, I immediately confirmed with Quillar that he was refusing to house in Unit J-3, and Quillar replied ,yes.'"  (Shankland Decl. ¶¶ 7-8.)

16.  Defendant Shankland states that, pursuant to CDCR policies and procedures, he "ordered the escorting officer to place Quillar in handcuffs and escort him back to Ad/Seg.  I then observed the officer escort Quillar, along with his property, out of Unit J-3.  Next, I returned to my office and wrote an Administrative Unit Placement Notice (CDCR Form 114-D), authorizing Quillar's return to Ad/Seg."  (Id. at ¶ 9.)  Defendant Shankland states that, "I was unaware at the time what materials were included among Quillar's property."[4]  (Id. at ¶ 6.)

17.  Plaintiff avers that, on January 13, 2006, when he refused to move into Housing Unit J-3, defendant Shankland "ordered his subordinate officer to confiscate all of my legal documents, and threatened that, "when I got out of adseg., I would be moving right back to the

---

[4]   Thereafter, Housing Unit J-3 Officer I. Stanley completed a disciplinary report charging plaintiff with "Delaying a Peace Officer."  The report noted that plaintiff's refusal to move into the housing unit "delayed the program in J-3 for approximately 45 minutes due to his refusal to re-house."  Officer Stanley quoted plaintiff as follows:  ",I'm not living in there.  This looks like a set up to me.'"  (Pltf. Decl., Exh. R (ECF No. 114-3 at 60).)
   A disciplinary hearing was held on February 5, 2006, wherein plaintiff was charged with violation of 15 C.C.R. § 3005(b) (failure to abide by written or verbal orders or instructions). Plaintiff stated in part, ",I'm not suppose[d] to be Clo B and they illegally reduced my custody.  I also have a complaint against the lieutenant that tried to move me in there.  The lieutenant already lied against me two other times that's why I refused to move in there.'"  (Id. at 61.)  Officer Stanley reported that plaintiff stated, during his interview, that "he refused to be housed in a dorm and would not be moved from Ad-Seg until he received ,cell status.'"  (Id.)  Plaintiff was found guilty of Section 3005(a) (failure to "obey all laws, regulations, and local procedures, and refrain from behavior which might lead to violence or disorder"), a lesser violation.  (Id.)  However, on April 3, 2006, the charge was dismissed in its entirety.  (Id. at 60; see also Pltf. Decl., ¶ 17.)

1    same bunk/bed that he was attempting to assign me to.'"  (Pltf. Decl., ¶ 16.)

2        18.  Defendant Shankland states, "I do not recall whether Quillar mentioned during our

3    conversation his need to access his legal materials while in Ad/Seg.  But even if Quillar made

4    such a request, I had no authority to honor it.  The Ad/Seg unit was under the control of another

5    lieutenant at the time.  Thus, whether Quillar could retain certain items of property while housed

6    in Ad/Seg was not within my discretion. . . . Following Quillar's return to Ad/Seg on January 13,

7    2006, I do not know whether Quillar requested access to his property, nor do I know what, if any,

8    property Quillar received."  (Shankland Decl., ¶¶ 10, 12.)

9        19.  On April 26, 2006, plaintiff completed another "Inmate Request for Interview" form,

10   which he designated a "Second Request," and "Duplicate copy," and which stated in full:

11            <u>Inmate Request for Interview, dated April 26, 2006</u>:  I have a May
             3, 2006 legal deadline.  I am in need of my legal documents.
12

13   The form bears no official response; the lines designated "Interviewed By," "Date," and

14   "Disposition," are blank.  (Pltf. Decl., ¶ 19; Exh. T.)

15       20.  On July 21, 2006, plaintiff signed a letter addressed to the Solano County District

16   Attorney, which stated in full (sic):

17            This letter is in response to the investigation that is currently
             undergoing regard this writer having been attacked by a
18            correctional officer, having false reports written, and now, placed
             up for transfer.  Please see attached declaration.  [Not included.]
19

20   (Pltf. Decl., Exh. U.)

21       21.  Plaintiff states that, "After having the Solano County District Attorney David

22   Paulson, send his investigator on prison grounds, I was only then given access to my legal

23   documents, but I had by this time defaulted on three separate cases."  (Pltf. Decl., ¶ 20 (emphasis

24   deleted) (citing Exh. U, and Pltf. RFJN, Exh. D [no relevant dates evident]).)

25       22.  On August 23, 2006, plaintiff was transferred to Centinella State Prison.  See <u>Quillar</u>

26   <u>v. CDCR</u>, District Court Case No. No. 04-1203 FCD KJM P (E.D. Cal.) (ECF Nos. 47-8).

27   ////

28   ////

VII.   Discussion

This case was remanded by the Ninth Circuit Court of Appeals on the sole ground that plaintiff had stated a denial of access claim based on his allegation that defendant Shankland was responsible for the confiscation of plaintiff's legal documents, causing plaintiff to "miss the deadline for filing a writ of certiorari to the U.S. Supreme Court concerning his criminal conviction."[5]  Case No. 09-17432 (9th Cir.) March 1, 2011 Order; see docket in instant case (ECF No. 71 at 2-3).

This claim is premised on the following specific allegations in the TAC:[6]

> ¶ 29.  [On January 13, 2006] Plaintiff made it extremely clear to Shankland that he had only five days left to file his certiorari under an extension granted by Sandra Day O'Connor dealing with Plaintiff's criminal appeal, and that Plaintiff needed his legal documents.  However, Shankland ordered that the escorting officer confiscate everything from Plaintiff.

> ¶ 30.  Plaintiff went further and cited CDCR regulations under CCR § 3164(a),[7] all to no avail as Shankland refused to listen.

> ¶ 31. On June 24, 2005, the U.S. Court of Appeals entered a judgment under Case No. 04-56571.  Once received, and after filing Petition for Rehearing, the court requested that four (4) additional

---

[5]  The Court of Appeals reversed the finding of the district court that plaintiff had "failed to provide information concerning his legal action that defendant Shankland is alleged to have interfered with.  Plaintiff has not shown that he suffered an actual injury or that he was pursuing a non-frivolous legal claim."  (ECF No. 58 at 5.)

[6]  Footnotes, internal citations and original emphasis have been omitted; note that the allegations of the TAC are not in chronological order.

[7]  15 C.C.R. § 3164(a) provides:

> (a) Inmates confined in administrative segregation for any reason will not be limited in their access to the courts.

Also relevant is 15 C.C.R. § 3164(b), which provides:

> (b) During a period of disciplinary detention, as described in Section 3330, legal resources may be limited to pencil and paper which will be provided upon request for correspondence with an attorney or the preparation of legal documents for the courts.  Other legal material in the inmate's personal property may be issued to an inmate in disciplinary detention if litigation was in progress before the inmate's placement in disciplinary detention and legal due dates are imminent.

copies be forwarded.  Then, prior to having received a reply from the 9th Circuit Court of Appeals, Plaintiff suffered from the herein violations.

¶ 32.  On September 5, 2005, while being confined in adseg. under the fraudulent reports, Plaintiff (for the second time) attempted to have his legal documents brought to him per CCR § 3164(a); however, he was ignored.  [¶]  On September 12, 2005, Plaintiff submitted a Third request for his legal documents, and on September 19, 2005, Plaintiff submitted a Fourth request to have his legal documents brought to him.

¶ 33.  Anticipating that he would not be receiving his legal material, on November 17, 2005, Plaintiff filed [in the Supreme Court] a "Notice and Request to File Late Appeal Due to Prison Guard Abuse/Declaration." (Filed November 29, 2005.)

¶ 34.  A couple days before Plaintiff went before the ICC members, he received the order granting an extension to and including January 18, 2006, from the U.S. Supreme Court.

¶ 35.  Plaintiff also received copies of the D.A. referral and the notice that the Solano County District Attorney would not be filing charges against Plaintiff regarding the false allegations.

¶ 47.  [Claim for Relief]  Defendant Shankland, having falsified multiple official reports against Plaintiff as a means to retaliate, causing Plaintiff to be placed into administrative segregation, then, confiscating Plaintiff's legal documents once Plaintiff refused to live outside of his legal custody status based on his mandated classification designation and out of fear for his safety, knowing, that Plaintiff was on a legal deadline, has violated the First Amendment of the U.S. Constitution . . . .

Plaintiff now contends, more broadly, that defendant Shankland's alleged confiscation of plaintiff's legal materials caused plaintiff to "default[] on three separate cases."  (Pltf. Decl. ¶ 20.) Plaintiff asserts that "[d]efendant Shankland's actions „chilled' not one, but three cases that were pending in two separate courts."  (Oppo. (ECF No. 114 at 5).)  Plaintiff explains in part that he "defaulted" in the Supreme Court, in Quillar v. California, Court of Appeals Case No. 03-56118, and Quillar v. Barranco, Court of Appeals Case No. 04-56571, because plaintiff was allegedly unable to meet the January 18, 2006 extended deadline for filing a petition for writ of certiorari in these allegedly consolidated cases.  (Oppo. (ECF No. 114 at 1, 5).)  The "third case" allegedly "chilled" by these matters, while not clearly identified by plaintiff, appears to encompass plaintiff's state law claims, for which he seeks remand of this action to the Solano County Superior Court.

15

1    For the reasons that follow, the court finds that plaintiff has failed to demonstrate an

2    actual injury concerning the merits of his criminal conviction as a result of the alleged misconduct

3    in this case.  The court finds no evidence to support plaintiff's claim that he "miss[ed] the

4    deadline for filing a writ of certiorari to the U.S. Supreme Court concerning his criminal

5    conviction."  Case No. 09-17432 (9th Cir.) March 1, 2011 Order; see docket in instant case (ECF

6    No. 71 at 2-3).

7    There is no evidence of record to support plaintiff's assertions that:  (1) plaintiff filed a

8    petition for writ of certiorari in the Supreme Court on February 24, 2005, seeking review of the

9    Court of Appeals' affirmance of the district court's denial of plaintiff's petition for writ of habeas

10   corpus in Quillar v. California, Court of Appeals Case No. 03-56118 (9th Cir.); (2) the Supreme

11   Court's January 18, 2006 extended deadline applied both to Quillar v. California, and Quillar v.

12   Barranco, Court of Appeals Case No. 04-56571 (9th Cir.); or (3) plaintiff was otherwise

13   precluded from timely pursuing the merits of his criminal conviction as a result of defendant

14   Shankland's alleged misconduct.

15   The record does not support plaintiff's contention that he filed a petition for writ of

16   certiorari challenging his criminal conviction, or that such petition was pending in the Supreme

17   Court during the relevant period.  Plaintiff asserts that, on February 24, 2005, he served each

18   Supreme Court Justice with a petition for writ of certiorari challenging the Court of Appeals'

19   decision in Quillar v. California, Court of Appeals Case No. 03-56118 (9th Cir.).  In support

20   thereof, plaintiff has submitted a log of his outgoing mail which indicates, in pertinent part, that

21   on February 24, 2005, plaintiff mailed documents to United States Supreme Court Justices

22   Kennedy, Breyer, Rehnquist, Scalia, Souter, Thomas, Ginsburg and O'Connor.  (See ECF No.

23   114-3 at 48-9.)  However, plaintiff has not otherwise identified these documents.  Plaintiff has not

24   provided a copy of the purported petition, nor any record from the Supreme Court's docket

25   indicating that a petition was filed in Quillar v. California.  The undersigned's independent

26   review of the docket for the Supreme Court[8] reflects no filings in Quillar v. California, Court of

27   ───────────────

28   [8] This court may take judicial notice of court records.  See Fed. R. Evid. 201 (a court may take
     judicial notice of facts that are capable of accurate determination by sources whose accuracy

1   Appeals Case No. 03-56118 (9th Cir.).  Consistently, the docket for the Ninth Circuit Court of

2   Appeals, in Quillar v. California, indicates no action in the case after the denial of plaintiff's

3   petition for rehearing on December 30, 2004, and subsequent issuance of mandate on January 26,

4   2005.

5         Moreover, the Supreme Court docket reflects no filings by plaintiff on or around February

6   24, 2005.  It appears that plaintiff pursued only the following matter in the Supreme Court during

7   the relevant period:[9]

8               Quillar v. Barranco, Court of Appeals Case No. 04-56571:

9               Nov. 17, 2005:  Plaintiff filed an application to extend time to file a
                petition for writ of certiorari

10

11              Jan. 6, 2006:  Justice O'Connor granted the request and extended
                the time to January 18, 2006

12              There are no further entries in this case.

13  For these reasons, the court finds no evidence to support plaintiff's contention that he filed a

14  petition for writ of certiorari in Quillar v. California, Court of Appeals Case No. 03-56118, or that

15  such petition was ever pending in the Supreme Court.

16        Similarly, the record does not support plaintiff's contention that the Supreme Court

17  consolidated Quillar v. California with Quillar v. Barranco, and thus, that the January 18, 2006

18  extended deadline in Quillar v. Barranco also applied to Quillar v. California.  Plaintiff's

19  purported consolidation request, a letter dated November 17, 2005, bears no indicia that it was

20  received by the Supreme Court.  (See ECF No. 114-3 at 51.)  Neither of the Supreme Court's

21  subsequent notices to plaintiff concerning the filing deadline in Quillar v. Barranco made any

22  reference to Quillar v. California.  (See ECF No. 109-2 at 8 (dated Dec. 1, 2005); ECF No. 114-3

23  _____

24  cannot reasonably be questioned); United States v. Wilson, 631 F.2d 118, 119 (9th Cir. 1980)
    (court may take judicial notice of court records).

25  [9]  Prior to the relevant period, plaintiff pursued in the Supreme Court Quillar v. Brinkman, Court

26  of Appeals Case No. 02-17036.  Plaintiff filed a petition for writ of certiorari on August 25, 2003,
    which was denied on November 3, 2003.

27    Subsequent to the relevant period, plaintiff filed in the Supreme Court a petition for original
    writ of mandamus on July 19, 2012, in In re Lee V. Quillar, Supreme Court Case No. 12-5387;

28  the petition was denied on October 1, 2012.

1    at 54 (dated Jan. 6, 2006).)  Plaintiff conceded these omissions at his deposition, and was unable

2    to identify any other documents in support of his assertion that the cases were consolidated.  (See

3    Pltf. Depo. at 43-49.)  Moreover, as previously noted, the Supreme Court has no docket entries

4    for Quillar v. California.  Therefore, the court finds that the January 18, 2006 extended deadline

5    authorized by the Supreme Court applied only to Quillar v. Barranco, Court of Appeals Case No.

6    04-56571 (9th Cir.).

7        It appears instead that plaintiff simply missed the regular deadline for filing a petition for

8    writ of certiorari in Quillar v. California, Court of Appeals Case No. 03-56118 (9th Cir.).  That

9    deadline was March 30, 2005, ninety days after the Court of Appeals' December 30, 2004 denial

10   of rehearing.  See Rule 13, Rules of the Supreme Court of the United States (petition for a writ of

11   certiorari must be filed within 90 days after the denial of a petition for rehearing). Therefore, the

12   pertinent Supreme Court deadline *expired* nearly four months *before* plaintiff's initial Ad Seg

13   placement, on August 28, 2005, and more than eight months *before* defendant Shankland

14   allegedly confiscated plaintiff's legal documents on January 13, 2006.  Liberally construing

15   plaintiff's allegations to infer that Shankland withheld plaintiff's legal documents not only

16   pursuant to the alleged confiscation on January 13, 2006, but for the entire duration of plaintiff's

17   Ad Seg placement, from August 28, 2005, until approximately August 23, 2006 (hence

18   encompassing plaintiff's institutional document requests in September 2005 and April 2006),

19   plaintiff has failed to demonstrate that any of these subsequent events interfered with his ability to

20   challenge his criminal conviction before the Supreme Court in Quillar v. California, Court of

21   Appeals Case No. 03-56118 (9th Cir.).

22       Accordingly, the court finds no actual injury to plaintiff in Quillar v. California, Court of

23   Appeals Case No. 03-56118 (9th Cir.), as a result of defendant Shankland's alleged conduct.

24   Similarly, plaintiff has not demonstrated any injury to another legal action challenging his

25   criminal conviction.  Plaintiff has failed to meet his burden to clearly identify his allegedly lost

26   cause of action and lost remedy.  Christopher, 536 U.S. at 413-15.  Thus, there is no evidentiary

27   support for the only remaining claim found cognizable by the Ninth Circuit, viz., that defendant

28   Shankland's alleged confiscation of plaintiff's legal materials caused plaintiff to "miss the

1    deadline for filing a writ of certiorari to the U.S. Supreme Court concerning his criminal

2    conviction."  Case No. 09-17432 (9th Cir.) March 1, 2011 Order; see docket in instant case (ECF

3    No. 71 at 2-3).

4             On this basis alone, defendant's motion for summary judgment should be granted.

5             Nevertheless, broadly construing the Court of Appeals' purpose in remanding this case,

6    the court considers whether plaintiff has submitted any evidence to support a reasonable inference

7    that defendant Shankland's alleged confiscation of plaintiff's legal materials otherwise impaired

8    plaintiff's constitutional right to access the courts, by causing actual injury to a nonfrivolous

9    claim in plaintiff's only other relevant contemporaneous action, Quillar v. Barranco, Court of

10   Appeals Case No. 04-56571 (9th Cir.).  The court is compelled to find that the claims asserted in

11   Quillar v. Barranco were frivolous, based on the Court of Appeals' determination that those

12   claims are not cognizable under Section 1983.  As earlier noted, in Quillar v. Barranco, plaintiff

13   alleged that his criminal defense attorney and her investigator violated plaintiff's constitutional

14   rights to due process and equal protection by withholding investigative reports from plaintiff.

15   The district court dismissed the action for failure to state a claim.  On June 24, 2005, the Court of

16   Appeals affirmed the district court's dismissal, finding no merit to plaintiff's appeal, for the

17   following reasons:

18              The district court properly dismissed Quillar's action because his
                claims are not cognizable under section 1983.  See Georgia v.
19              McCollum, 505 U.S. 42, 53 (1992) (emphasizing a public
                defender's actions as advocate are not done under color of state law
20              for purposes of section 1983).

21              To the extent Quillar contends the district judge acted improperly,
                this contention is not supported by the record.
22

23   See June 24, 2005 Memorandum Decision, Ninth Circuit Court of Appeals, Quillar v. Barranco,

24   Case No. 04-56571.

25            This ruling demonstrates that, even if there was sufficient evidence to support plaintiff's

26   contention that his alleged inability to access his legal materials, commencing January 13, 2006,

27   caused him to miss the January 18, 2006 deadline for filing a petition in the Supreme Court in

28   Quillar v. Barranco, Court of Appeals Case No. 04-56571, there was no resulting "actual injury"

1   involving a "nonfrivolous legal claim."  See Lewis v. Casey, 518 U.S. at 349-55.  Therefore, the

2   court need not reach the question whether defendant Shankland was responsible for the alleged

3   confiscation of plaintiff's legal materials.

4        For these reasons, the court finds no evidence to support plaintiff's denial of access claim,

5   based on either of plaintiff's relevant federal legal actions, and therefore recommends that

6   defendant's motion for summary judgment be granted.

7   VIII.  State Law Claims

8        Despite plaintiff's general assertion that his state law claims have been "chilled," because

9   no longer pending in the Solano County Superior Court, it is clearly plaintiff's intent to obtain a

10  remand of those claims to state court.

11       The TAC asserts state law claims premised on the California Constitution, California

12  statutes, and CDCR regulations.  (See TAC at ¶¶ 47-52.)  Following the Court of Appeals'

13  remand of this action, a magistrate judge previously assigned this case denied plaintiff's motion

14  to sever his state law claims from this action, in order to remand those claims to state court.  (See

15  ECF Nos. 83, 96.)  The magistrate judge reasoned that, "[i]n light of this court's continuing

16  subject matter jurisdiction over the remanded federal claim and the state law claims, plaintiff's

17  motion for severance is denied."  (ECF No. 96 at 3.)   Although plaintiff's federal claims have

18  been the focus of attention in the federal courts, the undersigned concurs with the former

19  magistrate judge that the court has retained subject matter jurisdiction over both plaintiff's federal

20  and state law claims.

21       Therefore, having resolved the only remaining claim over which this court has original

22  jurisdiction, the undersigned recommends that this court decline to exercise supplemental

23  jurisdiction over plaintiff's state law claims, see 28 U.S.C. § 1367(c)(3) (district court may

24  decline to exercise supplemental jurisdiction over state law claims if it has dismissed all claims

25  over which it has original jurisdiction), which should be remanded to the Solano County Superior

26  Court, pursuant to 28 U.S.C. § 1447(c).

27  ////

28  ////

IX.  Conclusion

In accordance with the above, IT IS HEREBY RECOMMENDED that:

1.  Defendant's motion for summary judgment (ECF No. 106), be granted;

2.  Judgment be entered in favor of remaining defendant Shankland on plaintiff's federal claims;

3.  The court decline to exercise supplemental jurisdiction over plaintiff's state claims, pursuant to 28 U.S.C. § 1367(c)(3); and

4.  This action be remanded to the Solano County Superior Court, pursuant to 28 U.S.C. § 1447(c).

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within fourteen days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Any reply to the objections shall be served and filed within fourteen days after service of the objections.  The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

Dated:  February 6, 2014

KENDALL J. NEWMAN
UNITED STATES MAGISTRATE JUDGE

/quil2394.msj

21